# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE  )
)
)
v.  )  I.D. No. 1911001006
)
)
)
TYLIEK SMITH,  )
)
Defendant.  )

## MEMORANDUM OPINION

Submitted: January 29, 2020
Decided: February 17, 2020

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Matthew Frawley, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Brian J. Chapman, Esquire, Law Office of Brian J. Chapman, Newark, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Tyliek Smith ("Defendant") faces adult charges of Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Destructive Weapon (sawed-off shot gun). After consideration of the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court was **DENIED** from the bench on January 29, 2020, with the expectation that this ruling would follow.

## FACTUAL AND PROCEDURAL HISTORY

It is alleged that on October 16, 2017, Defendant shot his intended victim in the back with a twenty-gauge sawed-off shotgun. The shooting occurred in broad daylight after Defendant ambushed the victim as he was walking down the street. Defendant subsequently fled to West Virginia, where he was then arrested in connection with a drug dealing investigation. Before leaving for West Virginia, Defendant was arrested on June 16, 2019 by Wilmington Police Department on charges of Aggravated Menacing and Criminal Mischief, currently pending in Family Court. The Defendant was 17 years old at the time of his arrest.

On November 12, 2019, Defendant was indicted on these charges to include Murder First Degree, PFDCF, and Possession of a Destructive Weapon. After being initially placed in adult prison in Logan County, West Virginia, Defendant was transferred to a juvenile facility in Boone County, West Virginia, and then came to

2

Delaware where he has remained at the New Castle County Detention Center since November 19, 2019. On December 5, 2019, Defendant filed a Motion to Transfer his Case to Family Court. On January 27, 2020, the State filed its Response and the reverse amenability hearing was held on January 29, 2020.

## STANDARD OF REVIEW

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[1] Since Defendant has requested transfer, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[2]

Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court;" and any "other factors which, in the judgment of the Court are deemed relevant."[3]

---

[1] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).
[2] *See, e.g., State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Ct. Mar. 31, 2014).
[3] 10 *Del. C.* § 1011(b).

## DISCUSSION

### *Fair Likelihood of Conviction*

Before weighing the § 1011(b) factors, "the Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile. The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[4] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[5]

Since Defendant is also charged for Possession of a Firearm During Commission of a Felony, 11 *Del. C.* § 1447A(f) as amended requires the Court to make a finding of proof positive or presumption great that the accused used, displayed or discharged a firearm during the commission of a felony. Specifically,

> Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.[6]

---

[4] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[5] *Id.*
[6] 11 *Del. C.* § 1447A(f).

4

This provision entitles a juvenile defendant to an evidentiary hearing and allows the firearm charges to be transferred back to Family Court if the Court does not find proof positive or presumption great that the juvenile used, displayed, or discharged a firearm during the commission of a felony.[7] The proof positive or presumption great standard is commonly understood as whether "after [a] full hearing 'there is good ground to doubt the truth of the accusation.'"[8] If so, then "the Court in its discretion [may] conclude[] from the evidence that the State does not have a fair likelihood of convicting the accused of the . . . offense."[9]

The State presented law enforcement to set out the facts of the underlying charges. Detective Matthew Geiser was assigned to investigate a shooting where the victim, identified as Dwayne Grimes, also known by the nickname "Skee" died of a single gunshot wound to his back. The investigation yielded 20-gauge shotgun shell casings consistent with the victim's fatal injuries. Surveillance from three or four locations in the area showed general activity at the time of the shooting but did not capture the shooting.

Detective Geiser testified that four witnesses provided relevant information. The first witness was hanging out in the area and came in contact with the victim prior to the shooting. They spoke for approximately 20 minutes. This witness also

---

[7] *See Id.*
[8] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted).
[9] *Id.* at 383.

5

identified Defendant as being in the area after he was shown a photo line-up. He did not identify him by name but by face, and stated that the Defendant was present at some point during the time of the incident.

The second witness stated that Defendant confided in him/her and admitted to this individual that he committed the murder. This witness also identified Defendant from a photo line-up and further offered that Defendant stated the reason for the shooting was that he "wanted to get to [victim] before he got to [Defendant]." Asked if he had been given any description of the shooting, witness number two stated that Defendant stated he shot him one time in the back.

Approximately four months after the shooting, a third witness stated that this individual also had a conversation with Defendant regarding the death of Mr. Grimes, referred to as "Skee." It is alleged that Defendant admitted to this witness that he committed the murder and shot him with a shotgun. The reason was consistent with that provided by witness number two—a "beef" between the victim and Defendant. During this interview, witness number three also provided more detail that Defendant surprised the victim, who attempted to run and was shot, and that Defendant described the shotgun as "Big Bertha."

A fourth witness saw two people at the time of the shooting and heard what he thought were firecrackers. He saw one individual half-running and another walking. The one walking was tucking a large firearm in front of his waistband.

6

A fifth witness provided consistent information about the victim's death and that he had a conversation with Defendant who admitted in similar fashion: "I did that....Got him before he got me." This witness added that Defendant decided to take the opportunity and went through the alley before ambushing victim. This witness also described the weapon as rusty, 20-gague, similar to a sawed-off, and confirmed the "Big Bertha" reference.

Beyond witnesses' statements, the State presented text messages, photos, and videos obtained through their investigation that shows evidence of guns, drug-related activity, and mocking messages regarding the victim's death. Text messages allegedly made by Defendant were introduced to show that he was comparing Mr. Grimes's death to that of a murder scene from the movie *Boys In the Hood*, where the victim had also been shot in the back with a shotgun. The State provided text messages to "smoke Skee," and to "get him with the pump." In addition to photos depicting drugs, money, and weapons, photos were introduced that show Defendant holding a sawed-off shotgun.

Needless to say, the evidence is strong against Defendant. Although the evidence also suggested that the witnesses may have reluctantly provided information to law enforcement, or were also facing their own issues with the law, these details will serve as fruitful grounds for the cross-examination. The Court finds proof positive or presumption great that the accused used, displayed or

discharged a firearm during the commission of a felony, and there remains "[a] real probability . . . that a reasonable jury could convict [Defendant] on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted" at trial.[10] The State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial.

### *Weighing § 1011(b)'s Four Factors*

**I.     Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record**

The first § 1011(b) factor is two-pronged.[11] Murder First Degree with its accompanying firearm charge is as serious as it gets. The killing involved an ambush where the victim was shot in the back. The evidence of social media thereafter, connects Defendant to the offense and demonstrates a lack of empathy or remorse. The first prong of the first factor weighs heavily against transfer. Defendant's criminal history is limited and weighs in favor of transfer. Thus, as to factor one, they split.

**II.     Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response**

Given Defendant's recent limited arrest history, there has been little treatment or rehabilitative efforts. According to DYRS since being detained, Defendant has

---

[10] *Id.*

[11] *See* § 1011(b)(1).

participated in all educational programming offered, and his family visits regularly. Defendant has maintained a Gold Phase status while detained, the highest phase in the CBT behavioral model. Nevertheless, YRS opines Defendant is not amenable to Family Court. This Court agrees. Defendant will by eighteen-years-old in June 2020, and DYRS will only provide services until age nineteen. The escalating violent behavior requires time for rehabilitation that is simply not present in this case. This factor weighs against transfer.

### III. Section 1011(b) Factor Three: Interests of Society and Defendant

The Court finds that society is best served if Defendant remains here. The cell phone evidence from Defendant demonstrates signs of immaturity and impulsivity. While juvenile behavior is expected at his age, the violent adult conduct needs to be addressed. Programs in Family Court may assist Defendant but they will be limited to his nineteenth birthday. Again, this is not enough time. The Court finds that it is also in his best interest to transition into adulthood through community supervision in this Court. This factor weighs against a transfer.[12]

---

[12] The fourth factor of § 1011(b)—other relevant factors the Court deems relevant—has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in its opinion.

## CONCLUSION

Under § 1011(b), for the reasons stated, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:  Prothonotary
cc:  Defendant
     Jennifer Skinner, Master Family Service Specialist